**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Michael Duane HUNT,
Defendant–Appellant.**

**No. 88–3222.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 31, 1989.

Decided Jan. 8, 1990.

Eric R. Johansen, Salem, Or., for defendant-appellant.

Stephen F. Peifer, Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

Before WRIGHT, TANG, and FERNANDEZ, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Michael Duane Hunt appeals the application of his Oregon first degree burglary conviction as a basis for sentence enhancement under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B)(ii). He also challenges the finality of his conviction, the district court's failure to give retroactive effect to the Sentencing Guidelines, denial of his motion to suppress and denial of his motion for acquittal. Because Hunt's burglary conviction was an improper sentence enhancement, we REMAND for re-sentencing but AFFIRM on all other issues.

## FACTS

Hunt escaped from the Oregon State Penitentiary in August 1987. In October 1987, two Portland police officers learned of his whereabouts through an investigation into an unrelated crime. Several weeks earlier, one of them had been in a high speed chase with Hunt following a routine traffic stop. Hunt had crashed his car and fled on foot.

Outside Hunt's house, the officers noted that his pickup truck was absent. They left and returned about 4 A.M. The truck was there and they knocked on the door of

**1030**

the house. Two upstairs tenants answered and gave the officers permission to enter and search for Hunt. They found him asleep in the basement with a loaded automatic pistol at the head of the bed.

He was taken to the police car and asked for his permission to search the house. He consented but only as to the basement area. The search produced a sawed-off shotgun, some eight feet from the bed. After being read his *Miranda* rights, he gave conflicting statements about how he obtained the two guns.

He was charged and convicted by a jury of being a felon in possession of a handgun, 18 U.S.C. § 922(g)(1) and unlawfully possessing an unregistered sawed-off shotgun, 26 U.S.C. §§ 5845, 5861, and 5871. The court denied his motions to suppress, to dismiss the information, and to acquit. He was sentenced under the ACCA, 18 U.S.C. § 924(e)(2)(B)(ii), to a term of 25 years.

## ANALYSIS

### I. SENTENCE ENHANCEMENT

Hunt argues his conviction under the Oregon first degree burglary statute was an improper basis for sentence enhancement under the ACCA. We review this issue de novo. *United States v. Chatman*, 869 F.2d 525, 527 (9th Cir.1989).

The ACCA provides for sentence enhancement when a defendant has three prior violent felony convictions. 18 U.S.C. § 924(e)(1). The term "violent felony" is defined at § 924(e)(2)(B)(i) and (ii). Subsection (ii) is relevant to our case and defines "violent felony" as a crime which:

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious

potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B)(ii).

As Hunt's prior conviction was under a state burglary statute, we consider first whether that act satisfies the term "burglary" within the ACCA.

#### A. *ACCA Definition of Burglary*

Hunt argues that our holding in *United States v. Chatman* precludes his Oregon burglary conviction from satisfying the ACCA's definition of burglary.[1] We agree.

In *Chatman*, this court decided that the California automobile burglary statute did not cover the kind of burglary that the ACCA was meant to encompass. It held that Congress intended the term "burglary" to have its common law meaning. 869 F.2d at 527. That meaning was defined as "breaking and entering of the dwelling house of another, in the nighttime, with the intent to commit a felony therein." *Id.* The automobile burglary statute did not satisfy that definition.

The Oregon first degree burglary statute fares no better. It defines first degree burglary thus:

(1) A person commits ... burglary in the first degree if he violates ORS 164.215 [second degree burglary][2] and the building is a dwelling, or if in effecting entry or while in a building or in immediate flight therefrom he:

(a) Is armed with a burglar's tool as defined in ORS 164.235 or a deadly weapon; or

(b) Causes or attempts to cause physical injury to any person; or

(c) Uses or threatens to use a dangerous weapon.

Or.Rev.Stat. § 164.225.

■ This statute does not conform to the common law definition of burglary as it does not require nighttime entry of a resi-

**1.** The government urges us to find erroneous *Chatman*'s definition of "burglary" under the ACCA. This panel, however, is bound by *Chatman* given the court's failure to review en banc. The Supreme Court has recently granted certiorari to consider what "burglary" in the ACCA means. *United States v. Taylor*, 864 F.2d 625 (8th Cir.), *cert. granted*, ⎯ U.S. ⎯, 110 S.Ct. 231, 107 L.Ed.2d 183

**2.** Second degree burglary occurs when a person "enters or remains unlawfully in a building with intent to commit a crime therein." Or.Rev.Stat. § 164.215.

dential building. Under *Chatman,* Hunt's conviction was not one for burglary for purposes of the ACCA.[3]

### B. Conduct Causing Serious Potential Risk to Others

The government argues, alternatively that, even if the conviction is not for a "burglary" under the ACCA, it is still a "violent felony" because it involves conduct posing a "serious potential risk of physical injury to another." *See* 18 U.S.C. § 924(e)(2)(B)(ii).

▇ We acknowledge at the outset that a foundation for this argument exists in the two-tier analysis applied in *Chatman* and *Cunningham.* In both cases, the court rejected the use of burglary convictions only after deciding the underlying statutes described neither "burglaries" nor "conduct causing a serious potential risk of physical injury to others as defined by the ACCA." *Chatman,* 869 F.2d at 530; *Cunningham,* 878 F.2d at 312. We conclude, however, that the government has failed to show the Oregon first degree burglary statute is a violent felony.

The government's argument requires consideration of whether the Oregon statute categorically concerns conduct presenting "serious potential risk of physical injury to another." *Chatman,* 869 F.2d at 530 (citing 18 U.S.C. § 924(e)(2)(b)(ii)). A categorical approach limits scrutiny to the language of the statute itself rather than any factual circumstances or potential circumstances. *Id.* at 529–30 (citing *United States v. Sherbondy,* 865 F.2d 996, 1008 (9th Cir.1988)).

Here, the government makes no attempt to ascertain whether the various portions of the underlying statute add up to a categorical description of a violent felony. Instead, the government argues simply that one portion of the statute, burglary of a residence, carries with it a per se serious potential risk of injury to others. This argument fails because, as we learned in *Sherbondy,* it is not enough that just one portion of the statute may involve serious potential risk of injury to others. 865 F.2d at 1010–11. Categorical analysis requires that the statute as a whole describes such risk. *Id.*[4]

Hunt's sentence was improperly enhanced because his Oregon conviction was not burglary within meaning of the ACCA. Nor has the government established that the Oregon statute describes conduct carrying a serious potential of physical injury to others. Hunt's sentence was wrongfully enhanced. We vacate the sentence and remand for resentencing.[5]

## II. MOTION TO SUPPRESS

A motion to suppress is generally reviewed de novo. *United States v. Thomas,* 844 F.2d 678, 680 (9th Cir.1988).

Hunt asserts fourth amendment violations as to the police entry into his home, the arrest and the post-arrest search. The government offers three theories upon which to affirm the validity of the entry and arrest: (1) Hunt's lack of standing as an escapee to assert fourth amendment rights against unreasonable search and seizure, (2) the police officers' good faith reliance upon the existence of an arrest warrant, and (3) exigent circumstances. Assuming without deciding that Hunt has

---

**3.** Nor does any burglary conviction in this Circuit satisfy the ACCA definition; *Chatman's* wake has washed the term "burglary" out of the ACCA. *See Chatman,* 869 F.2d at 527 (O'Scannlain, J., dissenting); *United States v. Cunningham,* 878 F.2d 311, 313 (9th Cir.1989) (Skopil, J., concurring).

**4.** We express no opinion as to whether the Oregon first degree burglary statute might categorically describe conduct posing serious potential risk of harm to others as the government failed to undertake this type of analysis. We note,

however, that one section of the statute allows conviction for the possession of a burglar tool, a circumstance which would not appear to involve the serious potential risk of physical injury to another.

**5.** Because we find Hunt's conviction to be an improper basis for sentence enhancement, we do not reach his challenge to the finality of his conviction. Nor need we reach his arguments for retroactive application of the Sentencing Guidelines.

standing,[6] we affirm the district court's finding of good faith reliance upon the arrest warrant.

### A. Initial Entry & Arrest

■ As the court noted, the police knew of the existence of an arrest warrant issued by the Department of Corrections. An arrest warrant for a suspect carries with it limited authority to enter the residence of that suspect to make an arrest if the police have reason to believe that the suspect is present. *See Payton v. New York*, 445 U.S. 573, 603, 100 S.Ct. 1371, 1388, 63 L.Ed.2d 639 (1980). Here, the Department of Corrections properly issued the warrant pursuant to its authority under Or.Rev.Stat. §§ 144.350 and 144.360, the warrant was not stale since Hunt was still at large, and the police acted with reason to believe Hunt was in his house.

■ Hunt's contention that an administratively issued warrant is constitutionally infirm is irrelevant so long as the police acted in good faith reliance upon the warrant process. *See United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *cf. Illinois v. Krull*, 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987) (good faith reliance on a statute, where no warrant whatever was provided for). The initial entry into the house was proper.[7]

### B. Post–Arrest Search

■ Hunt cannot successfully challenge the post-arrest search. The Government argued and the court found that he consented[8] to a search of the basement area.

A court's determination of consent depends on the totality of circumstances and is a question of fact. *United States v. Brown*, 884 F.2d 1309 (9th Cir.1989). Hunt denies he consented. The court's crediting of the police officer's testimony over Hunt's was not clearly erroneous.

### C. Post–Arrest Statement

■ Hunt's argument that his post-arrest statements were taken in violation of his *Miranda* rights is without merit. The issue is reviewed de novo as a mixed question of law and fact, while the district court's factual findings are reviewed for clear error. *United States v. Wolf*, 813 F.2d 970, 974 (9th Cir.1988). Hunt's arguments are not supported by the record.

### III. MOTION FOR ACQUITTAL

We review this issue in the light most favorable to the government and determine whether there was substantial relevant evidence produced from which the jury reasonably could have found the defendant guilty beyond a reasonable doubt. *United States v. Sarault*, 840 F.2d 1479, 1487 (9th Cir.1988).

■ Here, Hunt had exclusive control of the area where the gun was found, *United States v. Castillo*, 844 F.2d 1379, 1393 (9th Cir.1988), and also made statements conceding his possession of the gun. The record amply supports the verdict of guilty.

### CONCLUSION

Hunt suffered wrongful enhancement of his sentence under the ACCA because his

---

6. We recognize the possible incongruity of allowing a prisoner to reap the reward of greater constitutional protections without the prison than within but express no opinion on this issue. We note also counsel for appellant's response to questioning about the applicability of Second Circuit precedent on this issue [*United States v. Roy*, 734 F.2d 108 (2d Cir.), *cert. denied*, 475 U.S. 1110, 106 S.Ct. 1520, 89 L.Ed.2d 918 (1986)] consisted merely of the statement: "I just feel it's wrong." Such a response is neither persuasive nor helpful to the Court's resolution of issues on appeal.

7. If the police were lawfully on the premises, then the seizure of the handgun was lawful

under the plain view doctrine, *United States v. Alfonso*, 759 F.2d 728, 742 (9th Cir.1985), and/or justified as a search incident to lawful arrest. *United States v. Robinson*, 414 U.S. 218, 224, 94 S.Ct. 467, 471, 38 L.Ed.2d 427 (1973).

8. The government does not argue that the consent of the tenants to the search of Hunt's apartment authorized their initial entry. Indeed, the government could not make such an argument because the consent of the upstairs tenant would have been sufficient only to authorize the government's initial entry if the upstairs tenants were co-tenants of Hunt who shared dominion and control with him of the basement area. That was not the case here.

prior Oregon first degree burglary conviction was not "burglary" within the meaning of the ACCA. His other arguments are without merit. We REMAND for re-sentencing but AFFIRM all other aspects of the judgment.