950 F.2d 462
 Gregory N. KINNEY, Petitioner-Appellant,
v.
INDIANA YOUTH CENTER, By and Through its duly appointed
Agents, Employees and Representatives, Sally A. Park, Thomas
D. Richards, Paul W. O'Hauer, Indiana Department of
Correction, and its Agents, Employees, Board Members and
former Commissioner, John T. Shettle, Wesley A. Kissel,
Barbara J. Cope, Daniel F. Evans, Jr., Dr. Robert A. Keller,
John M. Nally, Robert W. Primmer, and John F. White, Jr.,
Respondents-Appellees.
 No. 91-1473.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 1, 1991.
Decided Dec. 9, 1991.
Rehearing Denied Jan 9, 1992.
 
 Perry B. Noble (argued), Jeffersonville, Ind., William L. Turner, Shepherdsville, Ky., for petitioner-appellant.
 David A. Nowak, Deputy Atty. Gen. (argued), Linley E. Pearson, Atty. Gen., Office of Atty. Gen., Indianapolis, Ind., for respondents-appellees.
 Before CUDAHY, RIPPLE and KANNE, Circuit Judges.
 KANNE, Circuit Judge.
 
 
 1
 This is a civil rights action brought by Gregory Neal Kinney, an eighteen-year old inmate who was shot while trying to escape from an Indiana correctional facility where he was confined for a six-year term on charges of escape and car theft. Kinney claimed excessive force was used in thwarting his escape and sued the officer who shot him as well as seven supervisory officials. The district court concluded that halting his escape by shooting did not violate the eighth amendment and entered summary judgment for the prison officials. Kinney appeals.
 
 
 2
 On June 2, 1988, Kinney was an inmate, and Officer Park a guard, at the Indiana Youth Center (IYC) which houses young men convicted of offenses ranging up to murder. It is a secure facility with fences and guard towers manned by armed correctional officers. Officer Park was assigned to Tower Two that day. At around nine o'clock in the morning, while in Tower Two, Officer Park noticed Kinney and another inmate named Billy Nash walk briskly to the first of two closed gates near the tower. She did not know who the inmates were by name but she suspected that they were going to try to escape. She yelled at them, "Boys, what are you doing?," but the inmates did not respond. They continued to head towards a gate in the first fence, climbed over it, and dropped to the other side. Fifty-two feet away was a gate in the second fence and beyond it no further barrier to their escape. As the two approached the second gate, Officer Park yelled at them again and started to pick up a shotgun. She thought twice about it and put the shotgun down thinking that it was too powerful to use. She grabbed a .22 caliber rifle instead, leaned out of the tower window, and as the inmates reached the top of the second gate, yelled "Halt, or I'll shoot." Another guard also yelled at them to stop. Several others heard Officer Park yell, but not Kinney who heard nothing over the noise coming from nearby construction. After Officer Park yelled "Halt, or I'll shoot," the inmates paused at the top of the second gate, looked at her and grinned. As Kinney and Nash started to drop from the second gate, Officer Park fired two shots at the inmates. She aimed at the shoulder of one and the leg of the other. Kinney was hit but Nash was not. Both men fell to the ground outside the second gate and neither made another move. Kinney incurred severe injury to his mouth.
 
 
 3
 Officer Park used the weapon available to her in the tower in order to disable the inmates and prevent their escape. She was concerned about the safety of civilians beyond the perimeter fence. The escape area was near the main entrance to the IYC's administration building and parking lot and thus both visitors and employees alike were subject to potential danger. Because of the danger posed to others if the inmates succeeded in escaping the institution, Officer Park decided to shoot.
 
 
 4
 Kinney thereafter filed a complaint under 42 U.S.C. § 1983 for the alleged violation of his fourth, fifth, eighth and fourteenth amendment rights arising out of the shooting. He named as defendants Officer Park, the Superintendent and Assistant Superintendent of the IYC, the Commissioner of the Indiana Department of Corrections, and seven members of the Board of Corrections. Kinney alleged that Officer Park, the only defendant directly involved in the shooting, used excessive force against him. Kinney alleged that the other defendants, all of whom he sued in their individual capacities, negligently trained and supervised Officer Park and pursued an unconstitutional policy regarding the use of deadly force.
 
 
 5
 The district court dismissed Officer Park for lack of personal jurisdiction. Kinney failed to serve her with the complaint as required by Fed.R.Civ.P. 4(j), so she never became a party to the case. See Williams v. Leach, 938 F.2d 769, 771-72 (7th Cir.1991). Kinney does not contest this dismissal on appeal.
 
 
 6
 The district court granted summary judgment for the remaining defendants.* It determined that at the time of the shooting, Kinney was a convicted person in state confinement whose right to be free from excessive force was governed by the eighth amendment standard. See Whitley v. Albers, 475 U.S. 312, 318, 106 S.Ct. 1078, 1083, 89 L.Ed.2d 251 (1986). Under this standard, the court found that Kinney was unable to show that Officer Park's conduct in shooting him while escaping amounted to cruel and unusual punishment. Absent such a showing, Kinney could not establish the derivative liability of the supervisors. See Gibson v. City of Chicago, 910 F.2d 1510, 1515 (7th Cir.1990).
 
 
 7
 Our review of the district court's grant of summary judgment is de novo. Santiago v. Lane, 894 F.2d 218, 221 (7th Cir.1990). This means we must examine the record in the same manner as the district court did, drawing all inferences in favor of Kinney, and applying the law to the undisputed facts. Id.
 
 
 8
 "In addressing an excessive force claim brought under § 1983, [our] analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." Graham v. Connor, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989). In most instances, that right is either the fourth or the eighth amendment. Id. The fourth amendment applies to excessive force claims arising in the context of an arrest or investigatory stop, and protects against the use of force that is not "objectively reasonable." Id. at 397, 109 S.Ct. at 1872; see Tennessee v. Garner, 471 U.S. 1, 7-8, 105 S.Ct. 1694, 1699-1700, 85 L.Ed.2d 1 (1985). The eighth amendment applies to excessive force claims arising after conviction, and protects against the "unnecessary and wanton infliction of pain." Id. 490 U.S. at 395 n. 10, 109 S.Ct. at 1871 n. 10; see Whitley, 475 U.S. at 319, 106 S.Ct. at 1084. In between arrest and conviction, the due process clause applies to preclude the use of force that amounts to punishment. Id.; see Bell v. Wolfish, 441 U.S. 520, 535-36 & n. 16, 99 S.Ct. 1861, 1871-73 & n. 16, 60 L.Ed.2d 447 (1979).
 
 
 9
 In light of Graham, we hold that the eighth amendment governs a prisoner's claim that prison officials used excessive force in the course of preventing his escape. Compare Robles v. Ramos, 729 F.Supp. 920 (D.P.R.1989) (post-Graham decision; inmate shot and killed while escaping from prison; eighth amendment applied); Mills v. Smith, 656 F.2d 337 (8th Cir.1981) (pre-Graham decision; inmate shot after escaping from jail; eighth amendment applied); Newby v. Serviss, 590 F.Supp. 591 (W.D.Mich.1984) (pre-Graham decision; inmate shot while escaping from prison; eighth amendment applied); with Henry v. Perry, 866 F.2d 657 (3d Cir.1989) (pre-Graham decision; inmate shot while escaping from prison; fourth amendment applied); Clark v. Evans, 840 F.2d 876 (11th Cir.1988) (pre-Graham decision; inmate shot and killed while escaping from prison; fourth amendment applied); cf. Cooper v. Leamer, 705 F.Supp. 1081 (M.D.Pa.1989) (pre-Graham decision; escaped inmate shot and killed at parents' home; fourth amendment applied). The less protective standard of the eighth amendment applies to a convicted person in custody because the state already "has secured a formal adjudication of [his] guilt in accordance with due process of law." Ingraham v. Wright, 430 U.S. 651, 670 n. 40, 97 S.Ct. 1401, 1412 n. 40, 51 L.Ed.2d 711 (1977).
 
 
 10
 Such a prisoner in the act of escaping may pose a serious threat to members of the community, prompting prison officials to take reasonable measures to prevent the escape. Whether the particular measure undertaken by them "inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.' " Whitley, 475 U.S. at 320-21, 106 S.Ct. at 1084-85 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.), cert. denied sub nom. John v. Johnson, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)). Factors relevant to this inquiry are "the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted." Id. 475 U.S. at 321, 106 S.Ct. at 1085 (quoting Johnson, 481 F.2d at 1033). Other factors include "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response." Id.
 
 
 11
 Applying this standard to the case at hand, it is obvious that Officer Park's conduct did not constitute cruel and unusual punishment. As the district court stated:
 
 
 12
 Indiana Youth Center houses youths convicted of crimes as serious as murder. Park states that she shot Nash and Kinney to prevent their escape. She believed that the use of force was necessary because if Nash and Kinney escaped they would be in or near the IYC parking lot where they could easily obtain hostages. Park used the least amount of force she believed necessary to prevent the escape of Nash and Kinney. Moreover, Kinney has provided no evidence from which it can be inferred that Park acted deliberately to inflict pain and suffering or that she acted with criminal recklessness.
 
 
 13
 (Memorandum Opinion at 8-9) (citation omitted).
 
 
 14
 To circumvent this result, Kinney argues that the district court improperly resolved disputed issues of material fact in finding that he was shot while escaping from the IYC and that Officer Park warned him before shooting. The district court correctly concluded that there were no disputes over these issues. Kinney did not contest the fact that he was hit "in the act of clearing the outer fence." Nor did he contest the fact that verbal warnings were given. See Ford v. Childress, 855 F.2d 1271, 1276 (7th Cir.1988) (fourth amendment/excessive force claim) ("[T]he plaintiff's testimony that he did not hear any warnings fails to present a question of material fact as to whether the giving of the warnings was feasible and if in fact they were given.") (emphasis in original) (footnote omitted). Even if Officer Park gave no verbal warning before shooting Kinney, she had no duty to do so, see Whitley, 475 U.S. at 324, 106 S.Ct. at 1086, and Kinney himself was on notice that Officer Park would shoot him when he ventured to climb the prison fence to make his escape.
 
 
 15
 Kinney also argues that the district court improperly found Officer Park acted in good faith in shooting him. We disagree. This finding was proper in view of the lack of any evidence that Officer Park acted deliberately with the intent to inflict unnecessary pain on Kinney. Wilson v. Seiter, --- U.S. ----, 111 S.Ct. 2321, 2324-26, 115 L.Ed.2d 271 (1991); McGill v. Duckworth, 944 F.2d 344, 347-49 (7th Cir.1991); Duckworth v. Franzen, 780 F.2d 645, 652-53 (7th Cir.1985), cert. denied, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986). Kinney's complaint that he needed more time to discover Officer Park's motives prior to summary judgment is unavailing. His failure to request a continuance to obtain discovery pursuant to Fed.R.Civ.P. 56(f) precludes us from concluding that the district court abused its discretion in ruling on the motion for summary judgment. See Chicago Florsheim Shoe Store Co. v. Cluett, Peabody & Co., 826 F.2d 725, 727 (7th Cir.1987).
 
 
 16
 For the foregoing reasons, the judgment of the district court in favor of the defendants is
 
 
 17
 AFFIRMED.
 
 
 
 *
 Kinney abandoned his actions against both the Indiana Youth Center and Indiana Department of Corrections. Therefore, an Eleventh Amendment analysis has not been applied