960 F.2d 153
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jose de Jesus TALAVERA-NEGRETE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Javier DOMINGUEZ-GUILLEN, Defendant-Appellant.
 Nos. 91-50453, 91-50484.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 10, 1992.
Decided April 15, 1992.
 
 Before GOODWIN, WILLIAM A. NORRIS and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Talavera-Negrete and Dominguez-Guillen appeal their convictions for conspiracy to import marijuana, conspiracy to possess with intent to distribute marijuana, importation of marijuana, and possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1), 846, 457, 960, and 963, and 18 U.S.C. § 2. Both defendants challenge the sufficiency of the evidence in support of their convictions. Finding that the government presented ample evidence to support the conspiracy, possession, and importation charges, we affirm the convictions.
 
 I. FACTS AND PROCEEDINGS BELOW
 
 3
 Defendants were arrested in the early morning hours of August 21, 1991, near the Imperial Beach Border Patrol Station. The station is located two miles north of the U.S.-Mexican border and is responsible for a five-mile stretch of the border extending from the San Ysidro port of entry and Interstate 5 west to the Pacific Ocean. The area is notorious for alien traffic and drug smuggling.
 
 
 4
 That night Border Patrol Agent Michael Gregg, using an infrared night vision scope mounted on the roof of the station, was surveying the area where the defendants were arrested. The infrared scope detects heat emitted by objects, including humans, and allows the scope operator to see the outline or "heat signature" of the object. The scope does not enable the operator to distinguish the clothing, facial characteristics, or measurements of individuals whose heat signatures are observed. Agent Gregg testified that he was familiar with the operation of the scope and that he had had over 150-200 hours of experience operating it. He also testified that he was familiar with the area south of the station and had travelled over it numerous times.
 
 
 5
 Agent Gregg began observing the area shortly after midnight on August 21. He saw no one in the area where defendants were apprehended until approximately 1:00 a.m. At that time, he observed three individuals walking west to east through an area known as the "17 ditch." Agent Gregg saw that the second and third individuals appeared to be carrying large, heavy bundles. Suspecting that the bundles might contain contraband, Agent Gregg radioed the sighting to other agents in the area. The three individuals frequently stopped, squatted down and waited. Agent Gregg occasionally lost sight of the individuals due to the thick vegetation along the edge of the 17 ditch. Over a period of about 35 minutes, he observed the individuals travel approximately 500 yards.
 
 
 6
 Agent Gregg observed the three individuals leave the 17 ditch, cross an area of open ground, and enter a baseball field that was also south of the station. The first individual walked north past the dugout area and out of Agent Gregg's field of vision. He or she was never located. The second and third individuals entered the dugout. Through holes in the side of the dugout, Agent Gregg was able to detect their heat signatures as they moved about. By this time, border patrol agents were approaching the baseball field from the north, northwest and southeast. Agent Gregg subsequently observed the two individuals leave the dugout without the bundles and run south across the ball diamond toward a brushy area.
 
 
 7
 At this point, Agent Gregg lost sight of the suspects, but he directed the other agents to the brushy area where he had last seen them. There an agent found defendant Talavera-Negrete lying face-down in the brush. Meanwhile, another agent searched the dugout and found a blue backpack and a green duffel bag, which together contained approximately 87 pounds of marijuana packaged in plastic. Another bundle containing a hand gun was found a few feet from the entrance to the dugout. Shortly thereafter, another border patrol agent discovered defendant Dominguez-Guillen lying face-down beneath some tumbleweeds in the brushy area not far from where Talavera-Negrete was arrested.
 
 
 8
 The defendants were indicted on five counts: (I) conspiracy to import marijuana, in violation of 21 U.S.C. §§ 952, 960 and 963; (II) importation of marijuana, in violation of 21 U.S.C. §§ 952 and 960; (III) conspiracy to possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846; (IV) possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); and (V) use of a firearm in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c). The defendants waived their jury rights and were tried together before Judge Keep on January 8-11, 1991. Each was convicted on Counts I-IV. The district court granted the defendants' motions for acquittal on Count V.
 
 
 9
 On April 8, 1991, the district court sentenced Talavera-Negrete and Dominguez-Guillen to concurrent 27-month sentences on each of the four counts, two years of supervised release, and a $200 special assessment. Talavera-Negrete and Dominguez-Guillen timely appealed.
 
 II. DISCUSSION
 
 10
 Defendants appeal the district court's denial of their motions for a judgment of acquittal under Fed.R.Crim.P. 29. Decisions on motions for judgment of acquittal are reviewed to determine whether, viewing the evidence in the light most favorable to the government, there was substantial relevant evidence produced from which the trier reasonably could have found the defendant guilty beyond a reasonable doubt. United States v. Hunt, 893 F.2d 1028, 1032 (9th Cir.1990), amended, 925 F.2d 1191 (9th Cir.), cert. denied, 112 S.Ct. 107 (1991). Under this standard, the government is entitled to all reasonable inferences that may be drawn from the evidence. United States v. Disla, 805 F.2d 1340, 1348 (9th Cir.1986).
 
 A. The Conspiracy Counts
 
 11
 To sustain the conspiracy convictions, the government must establish that the defendants knowingly agreed to accomplish some illegal objective, committed one or more acts in furtherance of their illegal purpose, and had the requisite intent necessary to carry out the substantive offenses. See United States v. Penagos, 823 F.2d 346, 348 (9th Cir.1987). The existence of an agreement may be inferred entirely from circumstantial evidence, such as acts done in furtherance of a shared criminal purpose or, as we sometimes have put it, by "concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose." United States v. Kiriki, 756 F.2d 1449, 1453 (9th Cir.1985) (quoting United States v. Monroe, 552 F.2d 860, 862-63 (9th Cir.), cert. denied, 431 U.S. 972 (1977)). Mere presence at the scene of a crime or association with members of a conspiracy, however, is not sufficient. United States v. Melchor-Lopez, 627 F.2d 886, 891 (9th Cir.1980).
 
 
 12
 The evidence showed that on the night of the defendants' arrest, Agent Gregg had observed three people in the area, two of whom were carrying large heavy bundles. Using the night scope, he observed the three individuals walk along the 17 ditch and cross a baseball field. The person not carrying a bundle continued north; the remaining two individuals stopped briefly in the dugout, then ran south across the ball diamond as border patrol agents approached. The suspects were last seen entering a brushy area south of the baseball field, and minutes later both defendants were found hiding there. At the same time, agents found a backpack and duffel bag in the dugout containing distribution-sized quantities of marijuana.
 
 
 13
 This evidence sufficiently established a concert of action between the defendants sufficient to support an inference that they agreed to import and to possess with intent to distribute marijuana and acted in furtherance of that objective. See United States v. Smith, 924 F.2d 889, 894 (9th Cir.1991) (holding that "coordinated activity can raise a reasonable inference of a joint venture").
 
 B. The Substantive Offenses
 
 14
 To prove possession of marijuana, the government must establish a sufficient connection between the defendants and the contraband to support the inference that the defendants knew of the presence of the contraband and exercised dominion or control over it. See United States v. Castillo, 866 F.2d 1071, 1086 (9th Cir.1989); United States v. Rodriguez, 761 F.2d 1339, 1341 (9th Cir.1985). Possession may be proved entirely by circumstantial evidence, but mere proximity to the contraband is not sufficient to establish possession. Castillo, 866 F.2d at 1086.
 
 
 15
 The defendants contend that the government failed to prove the possession and importation charges because it did not present sufficient evidence that they were the same people Agent Gregg had observed carrying the bundles of marijuana to the baseball dugout. Defendants urge us to accept the theory that they simply crossed the border and had the bad fortune to stumble into an area where drug smugglers were fleeing from border patrol agents. They emphasize that in using the infrared scope Agent Gregg switched frequently between low and high magnification levels, which caused his field of vision to fluctuate between an area 35-50 feet across and an area 100 yards across. Defendants also point out that no physical evidence was found on their persons which indicated that they travelled together, carried anything, or had any connection to the bags of marijuana or the handgun found at the dugout. We are not persuaded and agree with the district court that defendants' theory is implausible.
 
 
 16
 The district court's findings that the defendants were the same people who had carried the marijuana to the dugout were amply supported by evidence adduced at trial. As discussed above, the defendants were found shortly after the two smuggling suspects had been observed fleeing the dugout, and they were found in the brushy area toward which the suspects had run. Significantly, no other persons were observed anywhere in the vicinity during this time. Agent Gregg testified that during the entire time he assisted in tracking the suspected aliens, he did not observe any persons in the area other than persons he was able to identify as border patrol agents. In addition, border patrol agents closed in on the baseball field from three directions and positioned themselves to cut off possible escape routes. There is no evidence that these agents observed anyone other than the defendants in the area.
 
 III. CONCLUSION
 
 17
 The government presented sufficient evidence to support both defendants' convictions.
 
 
 18
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3