Dorothea **GRAVELY**, Plaintiff–Appellee,

v.

John **MADDEN**, Defendant–Appellant.

No. 96–4395.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 3, 1998.

Decided April 21, 1998.

---

Kevin J. O'Brien (briefed), Jay E. Presser (argued and briefed), O'Brien & Lease, Columbus, OH, for Plaintiff–Appellee.

Timothy J. Mangan (argued and briefed), Office of the Atty. Gen., Corrections Litigation Section, Columbus, OH, for Defendant–Appellant.

Before: MERRITT, KENNEDY, and BOGGS, Circuit Judges.

MERRITT, J., delivered the opinion of the court, in which BOGGS, J., joined. KENNEDY, J. (pp. 350–53), delivered a separate opinion concurring in the result.

## OPINION

MERRITT, Circuit Judge.

Defendant John Madden, an Ohio corrections officer, appeals an order denying his motion for summary judgment on qualified immunity grounds in this civil rights action arising out of his use of deadly force in apprehending an escaped felon. The District Court rejected Madden's claim of qualified immunity after concluding that there is "a version of the facts from which a jury could conclude that the use of force was not objectively reasonable, and the objectively reasonable standard has been well-established in the law at least since *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 was decided in 1985." Madden argues that the District Court improperly employed *Garner*'s Fourth Amendment analysis in denying his qualified immunity claim and instead should have applied the Eighth Amendment, which he contends allowed the use of deadly force under the circumstances. For the reasons briefly stated below, we conclude that under the applicable Eighth Amendment standard, Madden's use of force was reasonable as a matter of law. He is therefore entitled to qualified immunity. Accordingly, we vacate the District Court's order and remand for the entry of summary judgment in favor of Madden.

On June 25, 1987, David Gravely, a prisoner at the Pickaway Correctional Institute in Orient, Ohio, escaped from a minimum security prison farm detail. Four days later, Madden and other law enforcement personnel raided a residence where they determined Gravely was visiting a friend. Officer Madden and another corrections officer were stationed on either side of the rear landing of the building as other officers initiated the raid through the front door. Both had their service revolvers drawn. Madden was wearing street clothes but had his badge displayed. The other officer was wearing a standard corrections department uniform and also had his badge displayed. When Gravely stepped through the back door and onto the porch, both officers stepped back from the landing and into the light. Madden observed that Gravely had an object in his hand. Madden and the other officer ordered Gravely to freeze and give himself up. Gravely leaped off the landing and ran past the officers. Madden and the other officer again told Gravely to stop, but he ignored them and turned to run away. Madden then fired a single shot, which struck Gravely in the back, fatally injuring him. After Madden and the other officer approached Gravely, they discovered a butcher knife partially beneath Gravely's leg. The knife was apparently the object Gravely had in his hand when he left the building. Although Madden testified that he did not believe Gravely posed an immediate threat when he fired the shot, he believed that he had no other way to prevent Gravely's escape. Madden understood that an administrative regulation in effect at the time authorized him to use deadly force to apprehend an escaped prisoner.

The plaintiff, Dorothea Gravely, brought suit under 42 U.S.C. § 1983 as the administrator of David Gravely's estate, asserting that Madden's use of deadly force violated Gravely's rights under the Fourth, Eighth, and Fourteenth Amendments. The District Court denied the parties' cross motions for summary judgment, and Madden appealed the court's denial of his motion for summary judgment on the basis of qualified immunity. A previous panel of this Court denied the plaintiff's motion to dismiss the appeal for lack of jurisdiction. *Gravely v. Madden*, No. 96–4395 (6th Cir. March 21, 1997).

■ Madden asks this Court to reverse the District Court's denial of his motion for summary judgment seeking qualified immunity from the plaintiff's § 1983 claim. In order to establish his entitlement to qualified immunity, Madden must first show that he was acting within the scope of his discretionary authority when the incident occurred. *See Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir.1991) (per curiam) (although plaintiff carries ultimate burden of proving that defendant is not immune, defendant bears initial burden of showing he was acting within scope of discretionary authority at time of incident in question). The plaintiff argues that in 1987 Madden, as a correctional officer, lacked the authority to engage in efforts to recapture an escaped inmate. In support of this argument, she points out that until 1994 there was no statute on the books explicitly authorizing corrections officers to apprehend escaped inmates. *See* Ohio Rev. Code § 5120.48 (1994).[1] The plaintiff reasons that the enactment of a provision in 1994 conferring this authority on corrections officers establishes that they did not possess it before that time. We are not persuaded by this argument. Section 5145.21 of the Ohio Revised Code, as enacted in 1953, required the warden of the state penitentiary to "arrest and again commit to the penitentiary a convict who escapes ... and is found at large...." Ohio Rev.Code § 5145.21 (1953), *simultaneously repealed and amended by* 1994 Ohio Laws H 571 (effective Oct. 6,

---

1. Section 5120.48 reads as follows:
 Assignment and Deployment of Staff to Apprehend Escaped Prisoners
 If a prisoner escapes from a state correctional institution, the managing officer of the institution, after consultation with and upon the advice of appropriate law enforcement officials, shall assign and deploy into the community appropriate staff persons necessary to apprehend the prisoner. Correctional officers and officials may carry firearms when required in the discharge of their duties in apprehending, taking into custody, or transporting to a place of confinement a prisoner who has escaped from a state correctional institution.

1994). Pursuant to § 5145.21 and related provisions, the state department of rehabilitation and correction promulgated a number of regulations that clearly contemplated the involvement of corrections officers in the apprehension of escaped inmates. *See, e.g.,* Ohio Admin. Code § 5120–9–01 (1984) (authorizing the use of force where reasonably necessary to apprehend an escaped inmate). Some of these regulations were relied on for years before the enactment of § 5120.48 in 1994, and it is clear that § 5120.48 simply codified authority that already existed. Hence, we reject the plaintiff's assertion that Madden was acting outside his discretionary authority at the time of the incident.

 Because it is clear Madden was acting within his discretionary power when he engaged in efforts to apprehend Gravely, Madden is entitled to qualified immunity unless the plaintiff establishes that Gravely's right to be free from the application of deadly force was so clearly established at the time of the shooting that a reasonable official in Madden's position would have clearly understood that he was under an affirmative duty to have refrained from using such force. *Williams v. Bass,* 63 F.3d 483, 486 (6th Cir. 1995). Put another way, the question of whether Madden is protected by qualified immunity turns on the objective reasonableness of his actions, assessed in light of the legal rules that were clearly established at the time they were taken and based on the facts available to him. *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982); *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987). The District Court in this case concluded that at the time of Gravely's death it was clearly established under *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), that a law enforcement officer could not use deadly force to apprehend a fleeing felon unless it was "necessary to prevent the escape" and the officer had "probable cause to believe that the suspect pose[d] a significant threat of serious physical harm, either to the officer or to others." *Id.* at 11, 105 S.Ct. at 1701. Although Gravely was armed with a knife when he ran from the house, Madden later testified that he did not believe Gravely posed a significant threat of harm to anyone. Madden Dep. at 72–73, J.A. at 89–90. Under the *Garner* standard there might be some question as to whether Madden's actions were objectively reasonable. *Garner* does not, however, provide the relevant standard in this case.

While it was clear in 1987 that *Tennessee v. Garner* governed the use of excessive force by law enforcement officers on free citizens, it was not clearly established that *Garner* applied in excessive force cases involving escaped convicts. The use of excessive force to recapture an escaped convict creates a different problem than the use of force to apprehend a nonviolent fleeing felony suspect. The Fourth Amendment is not triggered anew by attempts at recapture because the convict has already been "seized," tried, convicted, and incarcerated. In addition, the historical reasons we provided in our opinion in *Garner v. Memphis Police Dept.,* 710 F.2d 240, 243–45 (6th Cir.1983), *aff'd,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1, for the rule against deadly force on a free citizen not convicted and incarcerated do not apply with respect to escaped convicts. Recognizing this distinction, the Supreme Court in *Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), stated that the Eighth Amendment's Cruel and Unusual Punishment Clause, rather than the Fourth Amendment or the Due Process Clause of the Fourteenth Amendment, provides the rule for deciding excessive force claims by "those convicted of crimes" because, with respect to such persons, "the State has [already] complied with the constitutional guarantees traditionally associated with criminal prosecutions." *Id.* at 318, 106 S.Ct. at 1083–84 (citations omitted); *see also Graham v. Connor,* 490 U.S. 386, 395 n. 10, 109 S.Ct. 1865, 1871 n. 10, 104 L.Ed.2d 443 (1989) ("After conviction, the Eighth Amendment 'serves as the primary source of substantive protection ... in cases ... where the deliberate use of force is challenged as excessive and unjustified.'") (quoting *Whitley,* 475 U.S. at 327, 106 S.Ct. at 1088). The *Whitley* case made it clear that the legal status of the victim of the excessive force determines whether the Fourth, the Eighth, or the Four-

teenth Amendment governs his excessive force claims.

It was clearly established well before 1987 that after conviction, a person such as Gravely enjoyed the protection against cruel and unusual punishment afforded by the Eight Amendment. It was also clear that this protection included the right to be free from the imposition of unnecessary and wanton pain and suffering by corrections officers. *See Whitley,* 475 U.S. at 320–21, 106 S.Ct. at 1084–85; *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1873 n. 16, 60 L.Ed.2d 447 (1979). In the context of restoring order on prison grounds, the Supreme Court explained that the question of whether the defendant's actions "inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Whitley,* 475 U.S. at 320–21, 106 S.Ct. at 1085 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)). In *Whitley* the Court identified some of the factors from which inferences of wantonness or knowing willingness with respect to the unjustified infliction of harm can be drawn: "the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of the injury inflicted." *Whitley,* 475 U.S. at 321, 106 S.Ct. at 1085 (quoting *Glick,* 481 F.2d at 1033). The Court stated further that factors such as "the extent of the threat to safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response" are also relevant to the analysis. *Whitley,* 475 U.S. at 321, 106 S.Ct. at 1085.

Although *Whitley* involved the use of deadly force during the suppression of a prison riot, the factors relied on by the Court in that context are also relevant in evaluating the use of force in the apprehension of an escaped felon. Applying these factors in the present case, and viewing the evidence in the light most favorable to the plaintiff, we conclude that a reasonable officer in Madden's position may well have deemed it permissible to use deadly force under the circumstances. The plaintiff has presented no evidence tending to show that Madden fired his weapon maliciously or sadistically for the purpose of inflicting harm on Gravely. Rather, the evidence establishes that Madden used deadly force in a good faith attempt to prevent the escape of an armed felon who had twice evaded capture. He fired his weapon only after Gravely had ignored repeated warnings to stop and give himself up. There is no indication that Gravely would have abandoned his attempt to escape if Madden had fired a warning shot. Simply put, there is nothing in the record contradicting Madden's claim that Gravely would have escaped but for his use of deadly force or Madden's assertion that he fired at Gravely for the sole purpose of preventing his escape. Under the circumstances, Madden's conduct cannot be said to have violated David Gravely's right to be free from cruel and unusual punishment.

The plaintiff suggests that Madden's use of force violated an administrative regulation in effect at the time of the shooting and that this violation defeats Madden's claim of immunity. The regulation in question, § 5120–9–01(F)(5) of the Ohio Administrative Code, which was promulgated in 1984, permits a corrections officer to use deadly force when the officer reasonably believes that such force is the least force necessary to prevent escape or to apprehend an escapee. Madden submitted an affidavit stating that at the time he shot Gravely, he believed Gravely would have escaped absent the use of deadly force, and the plaintiff submitted no evidence suggesting otherwise. Even if Madden's use of force violated the regulation, however, he would still be entitled to qualified immunity. The regulation in question does not create a substantive right that gives rise to a cause of action for damages. Rather, it provides a guideline for corrections officers with respect to the use of force. This guideline turns on the *observations and conclusions* of the individual officer. As such, violation of the regulation alone would not render Madden liable to suit for damages. *See Davis v. Scherer,* 468 U.S. 183, 194 & n. 12, 104 S.Ct. 3012, 3019 & n. 12, 82 L.Ed.2d 139 (1984) (officials sued for constitutional violations do not lose their qualified immunity simply because their

conduct violates some statutory or administrative provision; rather, they become liable for damages where there is a clear violation of statutory rights that give rise to cause of action for damages); *Washington v. Starke*, 855 F.2d 346, 349–50 (6th Cir.1988) (regulation that turns on observations and conclusions of individual officer does not create substantive right that destroys qualified immunity).

Finally, the plaintiff contends that if § 5120–9–01(F)(5) of the Ohio Administrative Code authorized Madden's use of deadly force, the regulation itself is unconstitutional. We have already held that Madden's conduct did not violate Gravely's right to be free from cruel and unusual punishment. For the same reasons, we reject the plaintiff's argument with respect to the constitutional validity of the regulation.

For the reasons stated, we VACATE the District Court order and REMAND the case for the entry of summary judgment in favor of the defendant.

KENNEDY, Circuit Judge, concurring in the result.

I concur in the result but respectfully dissent from the reasoning of the majority opinion. I am unpersuaded by the majority's analysis regarding the applicability of the Eighth Amendment. The cases upon which the majority relies all involve actions taken against convicted persons in the prison context. Because I believe that a convicted person whom prison officials are not hotly pursuing[1] is more analogous to a fleeing felon than to a confined prisoner, I would apply the Fourth Amendment to the claims of escapees. I then would find that the

prison officials' actions violated the decedent's rights under this Amendment. However, I too believe summary judgment is appropriate because the Fourth Amendment's applicability to an official's use of deadly force during an attempt to apprehend an escaped, convicted felon was not clearly established in 1987, when the relevant actions took place.

### A. Fourth Amendment Provides Proper Framework for Analyzing Gravely's Claim

In *Tennessee v. Garner*, the Supreme Court held that the Fourth Amendment applies to the use of deadly force during an attempt to apprehend a fleeing felony suspect. 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). The Court reasoned that this was so because the apprehension of a suspect is a "seizure" within the meaning of the Fourth Amendment. *Id.* at 7, 105 S.Ct. at 1699 (noting that "[w]henever an officer restrains the freedom of a person to walk away, he has seized that person," and that although "it is not always clear just when minimal police interference becomes a seizure," "there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment"). The Court did not elaborate whether its holding was limited to suspects or would apply equally to convicted persons at large. *Id.* We are able to find only one case since *Garner* that has decided the appropriate constitutional standard in a case involving a factual scenario identical to the one presented here.[2] In *Patterson v. Fuller*, the Northern District of Georgia extended *Garner*, concluding that the Fourth Amendment, not the Eighth, governs an escaped,

---

**1.** I would apply the Eighth amendment to convicted felons fleeing from prison throughout a chase so that prison officials would not be subject to two different sets of constitutional rules during one continuous chase. It is true that a hot pursuit distinction would require courts to determine at what point a prisoner has successfully completed an escape attempt. However, many lines that courts must draw are fuzzy along the edges; the hot pursuit determination is no more difficult than other determinations courts currently must make. Moreover, a framework already exists for making hot pursuit determinations.

**2.** The District Court stated that the Fifth Circuit, in *Wisniewski v. Kennard*, 901 F.2d 1276 (5th Cir.1990), also appears to have assumed, without deciding explicitly, that a Fourth Amendment analysis is appropriate when dealing with claims made by an escapee who has completed the escape and is then being reapprehended. However, this case is inapposite. Wisniewski was not a convicted felon; he had only been indicted. Moreover, the court explicitly declined to decide the "difficult issue" of whether the Fourth Amendment or Due Process clause applies.

convicted felon's excessive force claim. 654 F.Supp. 418, 421 (N.D.Ga.1987) (stating explicitly that "because Patterson had escaped, the Court finds the Eighth Amendment inapplicable,"); *see generally United States v. Hunt,* 893 F.2d 1028, 1031–32 (9th Cir.1990) (court "assum[ed] without deciding" that Hunt, as an escapee, had "standing . . . to assert fourth amendment rights against unreasonable search and seizure"). Unfortunately, the *Patterson* court did not articulate why an escaped, convicted felon should receive the same constitutional protections as a fleeing felony suspect rather than as an inmate attempting to escape from prison. *Id.*

The majority holds that *Garner* applies only to fleeing felony suspects and therefore is inapposite. Since Gravely was a convicted felon, it asserts that the Eighth Amendment is the relevant constitutional standard. The majority relies on the Supreme Court's opinion in *Graham v. Connor* for support:

> Our cases have not resolved the question whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins, and we do not attempt to answer that question today. It is clear, however, that the Due Process clause protects a pretrial detainee from the use of excessive force that amounts to punishment. *After conviction, the Eighth Amendment 'serves as the primary source of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified.' Any protection that 'substantive due process' affords convicted prisoners against excessive force is, we have held, at best redundant of that provided by the Eighth Amendment.*

490 U.S. 386, 395 n. 10, 109 S.Ct. 1865, 1871 n. 10, 104 L.Ed.2d 443 (1989) (emphasis added) (quoting *Whitley v. Albers,* 475 U.S. 312, 327, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1979)). *Graham v. Connor,* however, does not suggest that the Eighth Amendment is the *only* source of constitutional protection after conviction; it is merely the primary source of protection. Moreover, even *Graham v. Connor* appears to contemplate only

excessive force claims in the prison context and finds the Eighth Amendment properly applies to such claims when brought by convicted prisoners. Since the prison officials' actions against Gravely took place outside of the prison context and indeed any custodial context, I do not believe *Graham v. Connor* resolves the question of whether the Fourth or Eighth Amendment properly applies to Gravely's excessive force claim.

*Cornwell v. Dahlberg,* 963 F.2d 912 (6th Cir.1992), *Kinney v. Indiana Youth Center,* 950 F.2d 462 (7th Cir.1991) and *Brothers v. Klevenhagen,* 28 F.3d 452 (5th Cir.1994) arguably provide additional support for the majority's belief that the Eighth Amendment governs an official's use of deadly force to apprehend a convicted felon who is fleeing from corrections officials. This Circuit, in *Cornwell,* stated that a claim of improper use of force "asserted by a convicted prisoner is to be raised exclusively under the Eight Amendment's cruel and unusual punishment clauses." 963 F.2d at 915. The excessive force complained of occurred on the prison grounds during a protest. In *Kinney,* a correction officer shot an inmate as he attempted to escape by climbing the outer prison fence. 950 F.2d 462. The Seventh Circuit determined that the plaintiff, as a convicted prisoner, was barred from invoking the Fourth Amendment's protections, and that the Eighth Amendment controlled his claim. *Id.* at 465. Similarly, in *Brothers,* sheriff's deputies used deadly force to apprehend a pretrial detainee who attempted to escape from custody during transport from one holding cell to another. 28 F.3d 452. The Fifth Circuit held the Fourth Amendment did not apply to the resulting excessive force claim:

> Once an individual has been arrested and is placed into police custody, and surely after the arresting officer has transferred the individual to a jail cell, the individual becomes a pretrial detainee, protected against excessive force by the Due Process Clause. Until the detainee is released from custody, this status never reverts back to that of mere suspect. Any other conclusion would lead to the anomalous result of pretrial escapees receiving great-

er protection than those detainees who peacefully remain in their cells.[3]

*Id.* at 457. By analogy, Gravely's status while he was at large remained that of a convicted felon. Since the Supreme Court, this Circuit and other circuits plainly have stated that the lesser Eighth Amendment protections apply after conviction, the District Court's application of the Fourth Amendment arguably contradicted the dictates of these higher courts. However, each of those cases involved convicted *prisoners;* by definition, an escapee is no longer a prisoner. Therefore, this Court must consider whether the policy reasons for affording Eighth, rather than Fourth, Amendment protections to convicted prisoners also support applying the Eighth Amendment to the claims of convicted escapees.

The lesser Eighth Amendment constitutional protections courts afford prisoners is predicated in large part upon the need to maintain or restore discipline *within the prison* and to minimize threats to the safety of prison staff and inmates. *See, e.g., Whitley v. Albers,* 475 U.S. at 320, 106 S.Ct. at 1084–85; *Bell v. Wolfish,* 441 U.S. at 547, 99 S.Ct. at 1878 ("Prison administrators … should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."); *Kinney,* 950 F.2d at 465 (applying Eighth Amendment to claim of "convicted person in state confinement" that officials used excessive force in preventing his escape); *Sharp v. Kelsey,* 918 F.Supp. 1115, 1122 (W.D.Mich. 1996) ("The Eighth Amendment governs those charged with the *custodial care* of convicted persons, including where the care requires force employed as a security measure.") (emphasis added). *Cf. Ingraham v. Wright,* 430 U.S. 651, 670 n. 40, 97 S.Ct. 1401, 1412 n. 40, 51 L.Ed.2d 711 (1977) (justi-

fying the lesser protection on the ground that the state already "has secured a formal adjudication of guilt in accordance with due process of law"). Most of these concerns simply are not implicated—or if implicated are greatly reduced—where the convicted felon has successfully escaped and the officials merely seek to return him to prison.

Of course, one may argue that the potential threat an escaped, convicted felon poses to citizens militates in favor of not granting escapees greater constitutional protection while they remain at large. However, a convicted felon is not, by virtue of having been convicted, more dangerous than a fleeing felon guilty of the same crime. Moreover, affording an escaped, convicted person Fourth Amendment protections will not place society at greater risk since, pursuant to that standard, an officer still may use deadly force to apprehend the felon if the officer has probable cause to believe that the felon poses an immediate threat of harm to the officer or third parties. Thus, if the escapee is guilty of murder or other crimes which would permit the use of deadly force in his apprehension, such force would be permissible under the circumstances this case presents.

Finally, I would hold that the Eighth Amendment applies so long as the officials are in "hot pursuit," or "immediate and continuous pursuit," of the escapee. *See Welsh v. Wisconsin,* 466 U.S. 740, 753, 104 S.Ct. 2091, 2099, 80 L.Ed.2d 732 (1984) (defining hot pursuit). The Eighth Amendment should apply so long as the officials are in "hot pursuit" because we cannot expect prison guards to know, or take the time to learn, for what crime the escapee was imprisoned. In addition, applying the lesser constitutional standard throughout the "hot pursuit" of an escapee would be a deterrent to other prisoners contemplating an escape attempt. This deterrent interest is served when other pris-

---

**3.** As the defendant argued in his brief, it is troublesome that "an inmate who is successful in his escape falls within a Fourth Amendment realm, and an inmate who is unsuccessful in his escape remains in an Eighth Amendment realm. The apparent reward for successful illegal behavior is both inconsistent with the law and with common sense." *See United States v. Hunt,* 893 F.2d 1028, 1032 (1990) (recognizing "the possible in-

congruity of allowing a prisoner to reap the reward of greater constitutional protections without the prison than within"); *United States v. Roy,* 734 F.2d 108, 111 (2d Cir.1984) (stating that escapee should have same constitutional protections while at large as he would if he were still confined in the penitentiary). However, this concern alone is insufficient to warrant lesser constitutional protection.

oners are prevented from witnessing successful escapes. Once a convicted person is no longer being hotly pursued, his eventual recapture is less likely to affect other inmates' decision to attempt escape. At that point, the policy reasons militate in favor of Fourth Amendment protection.

Since the policy reasons supporting the grant of greater deference to prison administrators in the prison context do not support an equal grant of deference once the felon has escaped and the immediate and continuous pursuit, if any, has ended, I believe the Fourth Amendment should apply to an official's use of force in apprehending an escapee.

### B. The Right was not "Clearly Established"

As the majority stated, prison officials "are entitled to qualified immunity unless, 'on an objective basis, it is obvious that no reasonably competent officer would have concluded that [the conduct was lawful]; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.'" *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir.1992) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)). The Supreme Court in *Anderson v. Creighton*, 483 U.S. 635, 639–40, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987) elaborates:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Following the Supreme Court's decision in *Anderson*, this Circuit provided some guidance regarding what law its courts should rely on in conducting this inquiry:

> [I]n the ordinary instance, to find a clearly established constitutional right, a district court must find binding precedent by the Supreme Court, its court of appeals or itself. In an extraordinary case, it may be possible for the decision of other courts to

provide such "clearly established law," these decisions must point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting.

*Ohio Civil Serv. Employees Assn. v. Seiter*, 858 F.2d 1171 (6th Cir.1988).

As no relevant authority exists which clearly establishes that the Fourth Amendment governs the excessive force claims of escaped, convicted felons, the defending officer was entitled to qualified immunity and summary judgment.