NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0239n.06
Nos. 19-1629/1657/1668

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| BARBARA HAYWOOD, | ) | **FILED** |
|  | ) | Apr 30, 2020 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
| LAWRENCE HOUGH (19-1629); PAUL EAGLE | ) | COURT FOR THE WESTERN |
| (19-1657); PETER HUBBARD (19-1668), | ) | DISTRICT OF MICHIGAN |
|  | ) |  |
| Defendants-Appellants. | ) |  |

Before: GILMAN, DONALD, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. Barbara Haywood brought this action under 42 U.S.C. § 1983, alleging that three state officers falsely arrested her and that one of the three officers illegally searched her hotel room. The officers moved for summary judgment, asserting qualified immunity as an affirmative defense. The district court denied their motions in relevant part, and the officers now appeal. We AFFIRM in part, VACATE in part, and REMAND. We also DENY Haywood's motion to dismiss for lack of jurisdiction.

I.

This is an appeal from the denial of summary judgment for three officers' claims to qualified immunity. In this posture, we generally must "accept the facts assumed by the district court, which in turn considered the record in the light most favorable to [Haywood], the non-moving party." *Jones v. City of Elyria*, 947 F.3d 905, 913 (6th Cir. 2020). We recount the facts accordingly.

On February 14, 2016, Haywood traveled to Chippewa Correctional Facility in Kinross, Michigan to visit her husband, Lonnell Haywood, an inmate imprisoned there. She kissed her husband upon greeting him in the prisoner visitation room. While they were kissing, corrections officer Cassandra Wilcox observed "what appeared to be a green object being passed by mouth from Mrs. Haywood to Mr. Haywood. Ms. Haywood had a difficult time getting the object into Mr. Haywood's mouth and Mr. Haywood had a difficult time swallowing the object." Wilcox believed the object "may have been marijuana" and informed her shift supervisor. It is a felony in Michigan to give a controlled substance to a prisoner or bring a controlled substance into a correctional facility. *See* Mich. Comp. Laws §§ 800.281, .285.

Peter Hubbard, a corrections officer employed by the Michigan Department of Corrections (MDOC), was informed of Wilcox's observations. He approached Barbara Haywood at the conclusion of her visit and asked her to accompany him. She agreed and followed him to a nearby conference room where Paul Eagle, a police officer with the Kinross Police Department, was waiting for them. Hubbard asked Haywood whether she had passed marijuana to her husband. She denied that she had, joking instead that she had passed him a Jolly Rancher candy.

Hubbard and Eagle detained Haywood in the conference room for forty minutes until Lawrence Hough came to the scene. Hough is both an MDOC inspector and a Chippewa County deputy sheriff. Once Hough arrived, the three officers escorted Haywood to the prison lobby, where she was handcuffed. Hough then repeatedly threatened to take Haywood to jail unless she consented to a search of her car, which was on prison grounds. She agreed because she felt, in her own words, "scared to death." Hubbard and Eagle searched the car and found a small quantity of marijuana. Haywood was then placed in the front seat of Hough's police car. While she was being placed, the officers mocked her for being a white woman married to a black man.

Once Haywood was in the car, Hough again threatened to take her to jail if she did not permit him to search her hotel room. Feeling threatened, she agreed. Upon searching her room, Hough found another small quantity of marijuana as well as Haywood's expired Michigan Medical Marijuana Program card. Hough then transported Haywood back to the prison, where he released her. Haywood was subsequently charged with misdemeanor possession of marijuana in state court.

The following year Haywood, acting *pro se*, brought suit against Hubbard, Eagle, and Hough, alleging nine causes of action under § 1983 and Michigan law. The officers, who are separately represented, each filed a motion for summary judgment, asserting qualified immunity as a defense to Haywood's federal claims. A magistrate judge issued a report and recommendation (R&R) recommending that the district court grant the officers' motions on seven of Haywood's nine claims. The R&R recommended allowing Haywood's § 1983 claim against all three officers of false arrest to proceed to trial, as well as her § 1983 claim against Hough for illegally searching her hotel room. *Haywood v. Hough*, No. 1:17-CV-508, 2019 WL 3046850, at \*12 (W.D. Mich. Apr. 25, 2019).

The R&R determined that Wilcox's observations did not give the officers probable cause to arrest Haywood but did create reasonable suspicion to perform an investigatory stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968). Although Haywood's detention was initially lawful, the R&R concluded, under clearly established law reasonable suspicion did not permit Hubbard and Eagle to continue holding Haywood for forty minutes until Hough arrived. The long delay converted the *Terry* stop to an arrest without probable cause in violation of Haywood's Fourth Amendment rights. The R&R further concluded that Hough did not have probable cause to arrest Haywood under clearly established law at the time he arrived on the scene. Probable cause did not exist until the officers discovered marijuana in her car. The R&R recommended denying qualified immunity

to all three officers because they violated Haywood's clearly established Fourth Amendment rights. As for the illegal search claim, the R&R determined that Hough should be denied qualified immunity because a reasonable jury could find that Haywood did not validly consent to the search.

Each of the officers filed objections to the R&R, as did Haywood. The district court overruled the objections and adopted the magistrate judge's R&R in full. *Haywood v. Hough*, No. 1:17-CV-508, 2019 WL 2314685, at *3 (W.D. Mich. May 31, 2019). The three officers each timely filed a notice of appeal.

After Eagle filed his opening brief, Haywood filed a motion to dismiss his appeal. She argued that Eagle had impermissibly challenged the district court's factual assumptions, which deprived this court of jurisdiction over his appeal. Eagle filed a response, to which Haywood replied. A motions panel of this court concluded that "Eagle's brief does not simply concede the facts in the light most favorable to Haywood." *Haywood v. Eagle*, No. 19-1657, slip op. at 2 (6th Cir. Dec. 23, 2019) (order). But because "we can separate the reviewable issues from the unreviewable ones" "[i]n a case where the factual and legal issues are intertwined," the motions panel referred Haywood's motion to this panel to consider along with the merits of the appeal. *Id.*, slip op. at 2–3.

## II.

"We review a district court's ruling on a summary judgment motion de novo." *Sparks v. EquityExperts.org, LLC*, 936 F.3d 348, 351 (6th Cir. 2019). Summary judgment is warranted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We also review de novo the grant or denial of qualified immunity." *Bey v. Falk*, 946 F.3d 304, 311 (6th Cir. 2019).

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (per curiam) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam)). When an officer raises a qualified immunity defense, we determine (1) "whether the officer's conduct violated a constitutional right" and (2) "whether that right was clearly established at the time of the incident." *Watson v. Pearson*, 928 F.3d 507, 510 (6th Cir. 2019). We may evaluate the two prongs in either order. *Reich v. City of Elizabethtown*, 945 F.3d 968, 978 (6th Cir. 2019).

"Ordinarily, an order denying summary judgment is not a final order from which a party may appeal." *Jones*, 947 F.3d at 912. Under the collateral order doctrine, however, "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). In this posture, we do not have jurisdiction to consider "purely fact-based" challenges to the district court's decision. *McDonald v. Flake*, 814 F.3d 804, 812 (6th Cir. 2016). Instead, we generally "take, as given, the facts that the district court assumed when it denied summary judgment" and determine whether, on those facts, the appellants are entitled to qualified immunity. *Johnson v. Jones*, 515 U.S. 304, 319 (1995).

## III.

All three officers appeal the district court's decision denying them qualified immunity for Haywood's false arrest claim. We affirm the district court's judgment as to Hubbard and Hough, but vacate its judgment as to Eagle.

A.

Hubbard argues that he is entitled to qualified immunity for Haywood's false arrest claim because he lacked the authority to end Haywood's detention. He claims that, as a corrections officer, he is not a "peace officer" under Michigan law and therefore may not "[p]erform the functions of a peace officer," including making arrests and conducting criminal investigations. *See* Mich. Comp. Laws § 750.215. To the extent he participated in Haywood's arrest, he contends that he did so at the direction of Eagle and Hough; he had no independent authority as a corrections officer to detain her. He concludes that because it is not clearly established that a corrections officer is unable to rely on the directions of a police officer in the circumstances he faced, he is entitled to qualified immunity. Hubbard, however, misunderstands the consequences of his claim that he lacked authority under state law to perform a criminal investigation. Rather than establishing his entitlement to summary judgment, Hubbard's claim effectively concedes that he may not raise qualified immunity as a defense.

"Government officials are entitled to qualified immunity" only "with respect to 'discretionary functions' performed in their official capacities." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). Qualified immunity does not attach when an official manifestly "act[s] outside his discretionary authority." *Gravely v. Madden*, 142 F.3d 345, 347 (6th Cir. 1998); *see also Butz v. Economou*, 438 U.S. 478, 495 (1978) (noting that officers are not entitled to qualified immunity "for actions manifestly beyond their line of duty"). This is so because an official who "goes completely outside the scope of his discretionary authority . . . ceases to act as a government official and instead acts on his own behalf." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998); *cf. Wyatt v. Cole*, 504 U.S. 158, 168 (1992) (holding that "private defendants faced with § 1983 liability" are not entitled

to qualified immunity).  We look to state law to determine the scope of a state official's discretionary authority.  *See Gravely*, 142 F.3d at 347–48; *Sell v. City of Columbus*, 47 F. App'x 685, 692–93, 695–96 (6th Cir. 2002).

"A defendant bears the initial burden of putting forth facts that suggest that he was acting within the scope of his discretionary authority."  *Peterson v. Heymes*, 931 F.3d 546, 554 (6th Cir. 2019).  In the vast majority of cases, this requirement is an easy hurdle for the defendant to clear, "because most § 1983 claims involve conduct that relates to, or flows from, conduct that the official is indeed authorized to commit."  *In re Allen*, 106 F.3d 582, 594 (4th Cir. 1997).

In *Gravely*, the plaintiff, a family member of a prisoner shot dead after escaping, argued that the defendant acted outside the scope of his authority because, "as a correctional officer, [he] lacked the authority" under Ohio law "to engage in efforts to recapture an escaped inmate." 142 F.3d at 347.  We rejected that argument because we found that Ohio law did in fact give corrections officers that authority.  *Id.* at 347–48.  Here, by contrast, Hubbard does not argue that corrections officers have the authority under Michigan law to detain or investigate a prison visitor suspected of a crime.  Instead, he affirmatively denies that he has any such authority.  This amounts to a conscious waiver of the argument that he acted pursuant to his discretionary functions. Accordingly, Hubbard may not raise qualified immunity as a defense regardless of whether he violated any clearly established right.

A government official who acts wholly outside the scope of his authority is akin to a private individual facing § 1983 liability.  *See Harbert Int'l*, 157 F.3d at 1281.  Although private individuals are not entitled to qualified immunity, they may raise good faith as an affirmative defense in a § 1983 action.  *See Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 391 (6th Cir. 2020).

A government official in Hubbard's position may likewise be able to rely on this defense, but only Hubbard's claim for qualified immunity is properly before us.

B.

Hough argues that he is entitled to qualified immunity because Haywood's initial detention arguably fell within the limits of a permissible *Terry* stop. This is Hough's only argument on appeal as to the false arrest claim, but it is not properly before us.

The R&R concluded that Haywood "was effectively under arrest at th[e] point" that Hough arrived on the scene "despite the utter lack of probable cause"; on Haywood's version of the facts, therefore, the R&R concluded that Hough had violated Haywood's clearly established rights by continuing to detain her. 2019 WL 3046850, at *7. Hough did not claim, in his objections to the R&R, that the initial detention fell within the bounds of a permissible *Terry* stop. Instead, he began from the R&R's premise that the detention was an arrest and argued that the detention was supported by probable cause. In overruling Hough's objections, the district court focused solely on the issue of probable cause; it did not discuss whether reasonable suspicion would have justified Haywood's continued detention.

"This court cannot entertain an objection to a magistrate judge's report and recommendation that was not previously raised." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006). "[O]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have." *Alspaugh v. McConnell*, 643 F.3d 162, 166 (6th Cir. 2011) (alteration in original) (quoting *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991)). Because Hough did not raise his present argument as an objection before the district

court, it is forfeited.  Accordingly, he has not established that he is entitled to qualified immunity for Haywood's false arrest claim.

C.

Eagle makes three arguments in support of his claim to qualified immunity.  First, he argues that he did not seize Haywood at all because he was merely present in the conference room as a passive observer.  Second, he contends that he reasonably believed Haywood's detention to be a seizure pursuant to a lawful search.  Third, he argues that he had arguable probable cause to arrest Haywood.  Before discussing these claims, however, we address Haywood's motion to dismiss Eagle's appeal for lack of jurisdiction.

*Jurisdiction.*  Haywood argues that we lack jurisdiction over Eagle's appeal because he has not conceded to her the most favorable version of the facts.  But Eagle's claims—whether, on a given set of facts, an officer seized a suspect within the meaning of the Fourth Amendment, lawfully detained a suspect incident to a search of her vehicle, or had probable cause to arrest her—present "neat abstract issues of law" over which we have jurisdiction.  *Johnson*, 515 U.S. at 317 (citation omitted).  To the extent Eagle improperly challenges the district court's determination of what facts a reasonable jury could find, "we must 'ignore [his] attempts to dispute the facts and nonetheless resolve the legal issue, obviating the need to dismiss the entire appeal for lack of jurisdiction.'"  *Bunkley v. City of Detroit*, 902 F.3d 552, 560 (6th Cir. 2018) (quoting *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005)).  Haywood also claims that Eagle forfeited his second and third arguments, and that, as a result, we lack jurisdiction over them.  We disagree with Haywood that Eagle forfeited the third claim,[1] but we agree that the second is

---

[1] Haywood contends that Eagle has forfeited his third argument—whether it was clearly established that he lacked probable cause to arrest—because he did not include it in the statement of issues presented in his opening brief on appeal.  *See* Fed. R. App. P. 28(a)(5); *Dimond Rigging*

forfeited.[2]  Still, the forfeiture does not affect our jurisdiction.  *See Kreipke v. Wayne State Univ.*, 807 F.3d 768, 781 (6th Cir. 2015) (noting that we have discretion to consider forfeited arguments). Accordingly, we deny Haywood's motion to dismiss and proceed to the merits of Eagle's appeal.

*Mere presence.*  Eagle first argues that, even if Haywood's initial detention violated her clearly established rights, he is entitled to qualified immunity because he was a mere bystander, not actively involved in the detention.  The R&R concluded, however, that a reasonable jury could find that Eagle, along with Hubbard, held Haywood in a conference room for forty minutes. The district court adopted this conclusion.  Accepting these facts as true, Eagle was no mere bystander.

Absent a showing of direct responsibility, "an officer's 'mere presence' at the scene of an arrest fails to establish § 1983 liability."  *Alexander v. Carter ex rel. Byrd*, 733 F. App'x 256, 267 (6th Cir. 2018); *see also Bey*, 946 F.3d at 315 ("[M]ere presence at the scene of a search, without a showing of direct responsibility for the action, will not subject an officer to liability." (citation omitted)); *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (Officers' "mere presence during [an] altercation" where other officers used excessive force, "without a showing of some direct responsibility, cannot suffice to subject them to liability.").  "However, in cases where police officers take an active role in a seizure . . . , they are no longer mere passive observers . . . ." *Cochran v. Gilliam*, 656 F.3d 300, 308 (6th Cir. 2011).

---

*Co., LLC v. BDP Int'l, Inc.*, 914 F.3d 435, 449 (6th Cir. 2019).  But Eagle's third issue presented is whether he is "entitled to qualified immunity" because he had "arguable probable cause to detain [Haywood]."  Eagle Br. at 5.  This is simply another way of saying that it was not clearly established that he lacked probable cause.  *See Smith v. Cupp*, 430 F.3d 766, 776 (6th Cir. 2005).

[2] Eagle did not raise his second argument—that his initial detention of Haywood was arguably a lawful seizure incident to a search of her vehicle—in his objections to the R&R.  It is therefore not properly before us.  *Alspaugh*, 643 F.3d at 166; *McClanahan*, 474 F.3d at 837.

Of course, even if Eagle's belief that he was a mere bystander was mistaken, he is still entitled to qualified immunity on this ground if his mistake was reasonable. To deny Eagle qualified immunity, we must conclude that every reasonable officer in his position would have understood that he was actively participating in an illegal seizure instead of passively observing it. *See District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018); *Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 995 (6th Cir. 1994).

At her deposition, Haywood testified that Eagle was waiting in the conference room when Hubbard led her there. Once in the conference room, Haywood sat by the door while Hubbard and Eagle gathered in another corner of the room. Haywood testified that Hubbard asked her questions about what she had passed to her husband and that both Hubbard and Eagle mocked her. She recalled that the three of them remained in the room for about forty minutes until Hough arrived. Once Hough arrived, Haywood stated that the officers escorted her to the prison lobby where she was handcuffed. Relying on this testimony, the R&R found that "Hubbard and Eagle continued to detain Plaintiff for approximately 40 minutes, awaiting Defendant Hough's arrival." 2019 WL 3046850, at *3.

Eagle argues that this testimony, even if taken to be true, does not establish that he detained Haywood in the conference room. But whether Eagle detained Haywood is an issue of fact, and in this interlocutory posture, we do not have jurisdiction to determine whether "the evidence in the pretrial record [is] sufficient to show a genuine issue of fact for trial." *Johnson*, 515 U.S. at 307. It is true that we "may overrule a district court's determination that a factual dispute exists where evidence in the record establishes that the determination is 'blatantly and demonstrably false.'" *Austin v. Redford Twp. Police Dep't*, 690 F.3d 490, 496 (6th Cir. 2012) (quoting *Bishop v. Hackel*, 636 F.3d 757, 769 (6th Cir. 2011)); *accord Romo v. Largen*, 723 F.3d 670, 675 (6th Cir. 2013)

(recognizing "an exception" to *Johnson*'s holding "for blatantly contradicted facts"). But Eagle has identified no record evidence that affirmatively contradicts, let alone blatantly contradicts, the R&R's conclusion that Eagle confined Haywood in the conference room for forty minutes. Accordingly, we approach the legal question of whether Eagle actively participated in seizing Haywood from the R&R's factual premise. *Bunkley*, 902 F.3d at 560.

An officer seizes a person under the Fourth Amendment when he, "by means of physical force or show of authority, has in some way restrained [her] liberty." *Terry*, 392 U.S. at 20 n.16. An officer restrains a person's liberty when his "conduct would 'have communicated to a reasonable person that [she] was not at liberty to ignore the police presence and go about [her] business.'" *Florida v. Bostick*, 501 U.S. 429, 437 (1991) (quoting *Michigan v. Chesternut*, 486 U.S. 567, 569 (1988)). At the time of Haywood's initial detention, it was clearly established that confining a person to a room constituted a seizure under this standard. *See Florida v. Royer*, 460 U.S. 491, 502 (1983). Indeed, it was clearly established that an officer could seize a citizen by doing as little as asking her to stay where she is. *See United States v. Richardson*, 385 F.3d 625, 630 (6th Cir. 2004). Accordingly, no reasonable officer who confined a suspect to a room for forty minutes could have believed he was a mere passive observer. Eagle is not entitled to qualified immunity on this ground.

*Probable cause.* Eagle contends that he is immune from suit because he had arguable probable cause to arrest Haywood based on Wilcox's report that she saw Haywood pass something that may have been marijuana to her husband. That is, he maintains that even if the arrest was unconstitutional, it was not clearly established that he lacked probable cause.

"Because probable cause 'cannot be reduced to a neat set of legal rules' and is 'incapable of precise definition or quantification,' police 'officers will often find it difficult to know how the general standard of probable cause applies in the precise situation encountered.'" *Hernandez v. Boles*, 949 F.3d 251, 261 (6th Cir. 2020) (quoting *Wesby*, 138 S. Ct. at 590). Hence, in the Fourth Amendment context, a "legal principle" will "clearly prohibit the officer's conduct in the particular circumstances before him" only if it is defined with "a high 'degree of specificity.'" *Wesby*, 138 S. Ct. at 590 (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015) (per curiam)). This means that, "outside 'an obvious case,'" a court must "identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment" before denying an officer's claim of qualified immunity. *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Brousseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam)).

The R&R determined that Eagle's detention of Haywood was a de facto arrest under clearly established law, and it concluded that the facts he encountered "f[e]ll short of establishing probable cause to believe Plaintiff committed a crime." 2019 WL 3046850, at *6. But the R&R did not address whether preexisting law clearly established that Eagle lacked probable cause to arrest Haywood. As for the district court, its sole response to Eagle's present argument was that "[a] finder of fact could reasonably determine otherwise," without further explanation. 2019 WL 2314685, at *2. The R&R and the district court did not attempt to define with specificity what right Eagle violated when they rejected his claim of arguable probable cause. Nor did they attempt to identify a case where an officer, in similar circumstances, was deemed not to have had probable cause. The R&R and district court thus did not meaningfully perform the second prong of the qualified immunity analysis with respect to Eagle.

"It is the general rule that a federal appellate court does not consider an issue not passed upon below." *In re Application to Obtain Discovery for Use in Foreign Proceedings*, 939 F.3d 710, 731 (6th Cir. 2019) (quoting *Jackson v. City of Cleveland*, 925 F.3d 793, 812 (6th Cir. 2019)); *see Jones v. Sandusky County*, 541 F. App'x 653, 662–63 (6th Cir. 2013) (declining to determine whether defendant violated clearly established law for the first time on appeal); *McCoy v. Michigan*, 369 F. App'x 646, 653 (6th Cir. 2010) (same). We see no reason to depart from our general rule here. We therefore vacate the denial of Eagle's motion for summary judgment and remand to the district court to determine in the first instance whether it was clearly established on February 14, 2016 that Eagle did not have probable cause to arrest Haywood.

IV.

In addition to its ruling on the false arrest claim, Hough appeals the district court's denial of summary judgment to him on Haywood's claim that he illegally searched her hotel room. Although Hough did not have a warrant, he contends that he is entitled to qualified immunity because a reasonable officer in his position could have believed that Haywood validly consented to the search. [3]

---

[3] Haywood claims that this issue is forfeited for three reasons. First, she argues that Hough did not raise it below, but this is not the case. *See* Hough Motion for Summary Judgment, R. 130, PageID 1034 ("In order for a search to be upheld, officers need only reasonably believe that the search is consensual."); Hough Objections to the R&R, R. 162, PageID 1402 (same). Second, she contends that he did not include it in his statement of issues presented on appeal, but this is also mistaken. *See* Hough Br. at 3 ("Where plaintiff Haywood . . . consented to Hough's search of her hotel room, is Deputy Hough to summary judgment on the ground of 'qualified immunity' against plaintiff Haywood's claim that the search of her hotel room was unlawful?" (capitalization altered)). Third, she claims that Hough did not list this issue in the table of contents of his opening brief. Haywood is right about Hough's table of contents, but the issue is still properly before us. An appellant's inclusion of an issue in his table of contents may excuse his failure to include it in his statement of issues presented. *See United States v. Calvetti*, 836 F.3d 654, 664 (6th Cir. 2016) (deeming issue forfeited because it was not included in the statement of issues presented *or* the table of contents); *Tyler v. Ray*, 610 F. App'x 445, 451 n.1 (6th Cir. 2015) (Batchelder, J., concurring in the result); *Union Oil Co. of Cal. v. Prof'l Realty Invs., Inc.*, 72 F.3d 130, 1995 WL

An officer may not conduct a warrantless search of a suspect's hotel room unless the suspect consents or another exception to the warrant requirement applies. *See Stoner v. California*, 376 U.S. 483, 487–88 (1964). Hough does not argue on appeal that any of the other exceptions to the warrant requirement applies; he relies solely on Haywood's purported consent to the search. But even if Haywood did not genuinely consent to the search, Hough would still be entitled to qualified immunity unless no reasonable officer in his position could have mistakenly believed that she had consented. *Harris v. Klare*, 902 F.3d 630, 641 (6th Cir. 2018). As with other "cases implicating the Fourth Amendment," Hough "can only be denied qualified immunity if there is controlling precedent involving materially similar facts in which courts have found consent to be involuntarily given." *Id.* at 642.

The R&R and the district court both concluded that a reasonable jury could find that Haywood did not consent to the search, but neither discussed whether Hough would nevertheless be entitled to qualified immunity. As with Eagle's claim to qualified immunity, we think it best to allow the district court to pass on this question first. *In re Application*, 939 F.3d at 731. Accordingly, we vacate the denial of summary judgment as to Haywood's illegal search claim and remand to the district court to determine in the first instance whether it was clearly established on February 14, 2016 that no reasonable officer in Hough's position would have believed that Haywood had validly consented.

---

717021, at *11 n.4 (6th Cir. 1995) (table decision). But an appellant who has included an issue in his statement of the issues need not also include an issue in the table of contents of his opening brief in order to preserve it. *See* Fed. R. App. P. 28(a)(2) (prescribing *that* an appellant's opening brief must have a table of contents but not *what* the table of contents must include).

\* \* \*

For the foregoing reasons, we DENY Haywood's motion to dismiss Eagle's appeal, AFFIRM the district court's denial of summary judgment to Hubbard and to Hough for Haywood's false arrest claim, VACATE its denial of summary judgment to Eagle for Haywood's false arrest claim and to Hough for her illegal search claim, and REMAND for further proceedings consistent with this opinion.